34 C.C.P.A.(Patents)

## Application of AUER.

### Patent Appeal No. 5252.

Court of Customs and Patent Appeals.
Feb. 11, 1947.
Rehearing Denied April 18, 1947.
Second Petition for Rehearing Denied
May 16, 1947.

Laszlo Auer, pro se.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting all of the claims 1 to 9, inclusive, 18 and 19 of an application, Serial No. 393,946, filed May 17, 1941. The application is a continuation-in-part of appellant's application No. 159,017, filed August 13, 1937. A patent No. 2,242,218, dated May 20, 1941, issued upon that application.

All of the claims were rejected as unpatentable over the prior art. The cited references are:

Foulds et al., 1,734,516, November 5, 1929.

Ellis, 1,897,978, February 14, 1933.

Auer, 2,242,218, May 20, 1941.

Species claim 8 and generic claim 18 are illustrative of the subject matter of the alleged invention and read as follows:

"8. In the manufacture of sized textiles resistant to laundering and detergents and to crushing, creasing and wrinkling, said textiles carrying adsorbed urea-formaldehyde resin produced, in situ, in and on the fibers thereof, the improvement which comprises contacting the unsized fabric with a mixture of a solution of an organic acid having the following formula

wherein $X$ represents a substituent of the class consisting of H and COOH, said organic acid being difficultly soluble in cold water, and of a practically neutral aqueous solution of formaldehyde-urea, and simple reaction products thereof, at room temperature to produce an adsorption of said acid and said formaldehyde-urea by said fibres, said solution containing less than 20 per cent of dissolved solids. and being practically free of insoluble products, removing the excess of the aqueous liquid, drying the fabric to remove the residual water and formaldehyde at a temperature below that at which the resin is converted to the fully insoluble stage, and then curing the dried impregnated fabric at a temperature sufficient to fully resinify the urea-formaldehyde products into permanent insoluble resins resistant to laundering detergents."

"18. In the manufacture of sized textiles resistant to laundering and detergents and to crushing, creasing and wrinkling, the process which comprises setting or resinifying a urea-formaldehyde resin in

situ in and on the fibers of the textile material in the presence, in and on the fibers, of an organic acid having the following formula:

Wherein:

"X represents a substituent of the class consisting of H and COOH, said organic acid being difficultly soluble in cold water, said acid being applied to the textile by immersing the textile in an aqueous solution containing the acid, at a temperature sufficiently above room temperature to yield a clear solution."

It is to be observed from a reading of those claims that the subject matter of the application relates to the manufacture of sized textile materials which are resistant to laundering and detergents and also resistant to crushing, creasing and wrinkling. In order to cause the textile materials to possess said properties there is adsorbed upon them urea-formaldehyde resin produced, in situ, in and on the fibers.

The patent to Foulds et al. concerns the treatment of textile materials subject to creasing, crumpling, crushing or folding and discloses the use of urea-formaldehyde and glacial acetic acid or an equivalent amount of any weak acid as a catalyst in such treatment. It is stated that the general result of the treatment " * * * is to produce a non-crush effect on the fabric without undue tendering of the fabric, which will resist washing to a substantial extent." In the course of the process the fabric is dried at low temperature and the resin made insoluble by means of heating for several minutes at a temperature of 180⁰ C. It is stated that the use of acid catalysts for the final condensation on fabric is very desirable when using urea-formaldehyde resins for the reason that if not so used the non-crush effect will be less resistant to washing. The patent also contains the statement that " * * * in forming the intermediate condensation product as also the synthetic resin, the process in either example [in the patent], is, apart from details, broadly similar to the well-known methods of obtaining such bodies, * * *."

The patent to Ellis relates to resins and resinous products of the resinated ureas and substituted ureas type. It is chiefly concerned with the obtaining of urea-formaldehyde resinous bodies, but discloses that "Paper or cloth may be impregnated and sheets pressed together to form blocks," and also that the resins may be used for the purpose of stiffening hats.

In his production of urea-formaldehyde resins, the patentee states, "Preferably I employ an acid catalyst such as phthalic acid or other organic acid such as benzoic, chloracetic, oxalic acids and the like."

The Auer patent (appellant's) claims a specific method of carrying out the sizing process in which the acid and urea-formaldehyde are applied separately and, therefore, is a species of the generic invention claimed in the present application.

Prior to the examiner's statement an affidavit was filed by appellant in which a description of comparative experiments made by him were set out for the purpose of indicating that the acid catalysts generally used with urea-formaldehyde resins, such as disclosed by the Foulds et al. patent, are inferior and not equivalent to the boric or phthalic acids used by him. We have considered the affidavit, but for reasons herein appearing find it unnecessary to discuss its contents.

The examiner rejected claims 1 to 7, inclusive, which are directed to a specific two-step form of the process, as not readable upon the elected species. He rejected claims 8, 9, 18 and 19 as being unpatentable over the Foulds et al. patent and also over the patent to Ellis. He further rejected those claims as unpatentable over the allowed claims in the Auer patent and as involving no invention over the Foulds et al. patent in view of the patent to Ellis.

The board found no reversible error in the examiner's position and sustained the rejections.

While the appellant in his reasons of appeal has alleged error in the rejection of claims 1 to 7, inclusive, he makes no mention of such rejection in his brief. In any event they are not before us on their merits. If the decision of the board with respect to generic claim 18 should be reversed, then further examination by the examiner of claims 1 to 7 would be in order.

Elected species claims 8 and 9 involve a process wherein the catalyst is included in the urea-formaldehyde solution.

Claim 19 merely adds to claim 18 a temperature limitation of the acid-containing solution of about 88° to 90° C.

In rejecting the generic claims the examiner pointed out that while the present application was co-pending with the application of the Auer patent, they were not presented until June 29, 1943, over two years after the date of that patent. He therefore rejected the claims on the authority of In re Carrier, 55 App.D.C. 400, 4 F. 2d 1013.

The examiner further rejected those claims as being unpatentable over the Foulds et al. patent in view of the patent to Ellis.

It is clear that the Foulds et al. patent discloses treatment of textiles by setting a urea-formaldehyde resin, in situ, in and on the fibers thereof. This is acknowledged by appellant in his brief wherein it is stated that the Foulds et al. patent was " * * * the first to teach to crease-proof textiles, such as rayon, by depositing a water soluble urea resin in and on the fibers."

It seems to us the only difference between the process of appellant and that disclosed in the Foulds et al. patent is that in the latter the acid catalysts preferred by appellant are not disclosed. The specific catalysts of appellant's claims are, however, disclosed in the Ellis patent for the declared purpose of making urea-formaldehyde resins and it is stated that such resins may be employed in the process of the Ellis patent for the impregnation of cloth and the stiffening of hats. It will also be noted that the process in the Foulds et al. patent is extended to the general field of obtaining resinous bodies as heretofore mentioned.

We can perceive no error in the rejection of claims 18 and 19 on the patent to Foulds et al. in view of the Ellis patent. While it is true that in the latter nothing is stated with respect to treating materials for the desired result defined in the rejected claims, nevertheless in our opinion it cannot be questioned that in the formation of urea-formaldehyde resins it would not involve invention to apply the catalysts of the Ellis patent to the process disclosed in the Foulds et al. patent.

It seems clear that the article produced by the operation of the Ellis process would have the inherent property of being resistant to laundering and detergents and also have the effect of causing material upon which it could be used to be resistant to crushing, creasing and wrinkling.

We agree with the tribunals of the Patent Office that the temperature limitation contained in claim 19 is not critical. It conforms to appellant's specification in which it is stated that neither of the acids employed by appellant " * * * has any great solubility in hot water but the amount which will remain in solution at a temperature of 88° to 90° C. is sufficient * * *." Apparently there is nothing unusual or unexpected in the temperature set out in this claim, particularly in view of the statement in the Foulds et al. patent that the fabric is dried at a low temperature before insolubilizing the resin by heating up to 180° C.

Claims 8 and 9 were also rejected as involving no invention over the Foulds et al. patent in view of the Ellis patent.

Claim 8 provides for a mixture of a solution of urea-formaldehyde and one of appellant's acid catalysts and applying said mixture to the fabric. In the Foulds et al. disclosure the acid catalyst therein set out with a solution of urea-formaldehyde is likewise applied to cloth. As has been stated before benzoic and phthalic acids, those used by appellant as catalysts, are old as disclosed in the Ellis patent.

Claim 9 adds to claim 8 the limitation that the second solution in the mixture contains " * * * water soluble precondensed formaldehyde-urea resin, * * *." The examiner held that resins disclosed in the

Foulds et al. patent are in precondensed form and in our opinion there is no reason to hold otherwise. We hold, therefore, that claims 8 and 9 were properly rejected.

In view of what has been said we deem it unnecessary to discuss the other reasons given for rejecting the claims and the decision of the Board of Appeals is affirmed.

Affirmed.